**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| SIGHTLINES, INC. | CIVIL ACTION |
| VERSUS | |
| LOUISIANA LEADERSHIP INSTITUTE | NO. 13-527-SDD-RLB |

**RULING ON PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on a *Motion for Partial Summary Judgment*[1] filed by Plaintiff, Sightlines, Inc. Defendant, Louisiana Leadership Institute (LLI), has filed an *Opposition* to the motion, to which Sightlines has filed a *Reply*.[2] For the following reasons, Sightlines' *Motion for Partial Summary Judgment* is GRANTED.

**I.  STATEMENT OF MATERIAL FACTS**

As an initial matter, the Court finds those facts submitted in Sightline's *Statement of Uncontested Material Facts*[3] are deemed to be admitted for the purposes of this motion due to LLI's failure to controvert them as required by Local Rule 56.2. Local Rule 56.2 requires the non-moving party to submit disputed facts as to which there is a genuine issue to be tried. As this Court recently explained, "wherever [the non-moving party] fails to direct the Court to specific evidence in the record to controvert the supporting evidence set forth by the [movant] ... the fact is deemed admitted for purposes of LR 56.2."[4] Not only does LLI fail to dispute the five statements of material facts presented by Sightlines, LLI offers no support for the facts it does contend are

---

[1] Rec. Doc. 11.
[2] Rec. Doc. 13 and Rec. Doc. 16, respectively.
[3] Rec. Doc. 11-2.
[4] *Ahumada v. Belcher Management, LLC*, 2014 WL 2832674, at *2 (M.D.La. June 23, 2014).

material to this motion. Accordingly, the Court finds LLI has failed to carry its burden of establishing a genuine issue of material fact by controverting Sightline's facts and supporting evidence. Therefore, the facts in Sightline's *Statement of Uncontested Material Facts*[5] are deemed admitted.

## II. BRIEF OVERVEIW OF FACTS AND PROCEDURAL HISTORY

Sightlines, a Kentucky Corporation, entered into a construction contract with LLI, a Louisiana non-profit corporation, to construct, deliver, and install two Luxury Suites in the Doug Williams Stadium located on LLI's campus in Baton Rouge for a total contract price of $265,000.[6] Pursuant the plain language of the contract, LLI was to pay Sightlines in three increments as follows: "1/3 with order, 1/3 when all materials are at site, 1/3 net 10 days after completion."[7] It is uncontested that LLI timely paid the first one-third payment, or $88,333.33. According to Sightlines, however, it submitted a bill to LLI for the balance owed on the contract for the second and third payments in September of 2012. At that time, LLI asked Sightlines to address two remedial repairs, water leakage and egress, related to the suite areas for a retainage of $10,000; this additional fee would not be due, however, until the additional issues were addressed to LLI's satisfaction. In November of 2012, Sightlines informed LLI's founder and representative, Cleo Fields, that the remedial repairs had been completed.[8] Sightlines

---

[5] Rec. Doc. 11-2.
[6] Rec. Doc. 1-2, p. 3; Rec. Doc. 11-2, p. 1. According to the terms of the Parties' contract, Sightlines would construct two Luxury Suites at Doug Williams Stadium, and such work would entail the "[r]emoval of existing materials at press box area, re-engineering structural steel support for press box. Extension of existing aluminum decking to accept flip up chairs. Aluminum guardrail in front of flip up chairs. Trim and fit around luxury suites and flip up chair areas." Rec. Doc. 11-3, p. 4; rec. Doc. 16-4, p.96.
[7] Rec. Doc. 1-2, p. 3.
[8] Rec. Doc. 1-2, p. 12. Rec. Doc. 16-2 (LLI's Rule 26(a)(1) Initial Disclosures No. 1 "Mr. [Cleo] Fields is knowledgeable of all aspects of the contract at issue and all defects associated with the installation of the stadium suites at the Louisiana Leadership Institute."). Rec. Doc. 16-7, p. 1. Rec. Doc. 16-8 (Sightline's Rule 26(a)(1) Initial Disclosures No. 2: "Mr. [Cleo] Fields was personally involved in negotiations with

contends that, since December 21, 2012, it has been attempting to collect payment of the balanced owed on the Parties' contract to no avail. Therefore, after placing a lien on LLI's property, Sightlines filed the instant lawsuit asserting a breach of contract claim against LLI seeking to recover the past due amount owed.[9] Specifically, LLI seeks to recover its second and third payments under the Parties' contract.

LLI has answered Sightlines allegations, along with asserting its own counterclaim.[10] LLI contends that the luxury suites were improperly installed and seeks $265,000 for their removal and replacement.[11]

Relying on Louisiana's substantial completion doctrine, Sightlines claims that there is no genuine issue of material fact that Sightlines substantially completed its performance of the Parties' contract and is entitled to payment of the contract price, minus any proven deductions. LLI argues that the second and third payments were contingent on the delivery of materials and completion of a project that was free from defects and properly installed. Hence, LLI contends that summary judgment is inappropriate because the evidence shows that the suites were not substantially completed or able to be used for their intended purposes.

### III.  LAW AND ANALYSIS

####   A.  Summary Judgment Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

Dave Giffen. Mr. Fields held himself out to be an authorized representative of the Louisiana Leadership Institute and made oral representations and was the author of certain communications with Sightlines, Inc. relevant to the subject matter of this litigation.").
[9] Sightlines seeks to recover $181,786.67 due under the contract, as well as interest, costs and attorney fees. Rec. Doc. 1, p. 5.
[10] Rec. Doc. 3.
[11] Rec. Doc. 3, p. 3, ¶23.


law."[12] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[13] When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial."[14]

Once the movant produces such evidence, then the burden shifts to the respondent who "must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial."[15] However, the respondent "may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. If no issue of fact is presented and the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for."[16] Furthermore, before the court can find that there are no genuine issues of material fact, it must be satisfied that no reasonable trier of fact could have found for the nonmoving party.[17]

### B. Substantial Performance Doctrine

Louisiana's substantial performance doctrine "holds that, notwithstanding defects, a contractor has the right to recover the balance due on his contract if he has substantially performed his obligations."[18] While a contractor who has substantially

---

[12] Fed.R.Civ.P. 56(a)(West 2014).
[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).
[14] *Rodgers v. Lewis*, 2012 WL 4158506, *1 (M.D.La. Sept. 18, 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).
[15] *Id.*
[16] *McCorkle v. Metropolitan Life Ins. Co.*, 2013 WL 166222, *1 (M.D.La. Jan. 14, 2013)(citing Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[17] *Id.*
[18] *Weill Constr. Co., Inc. v. Thibodeaux*, 491 So.2d 166, 170 (La.App.3 Cir. 6/25/86).

performed a building contract is entitled to recover the contract price, "the owner is relegated to having the price reduced by the amount necessary to perfect or complete the work properly."[19] Whether there has been substantial performance to permit recovery of the contract is a question of fact.[20] The Louisiana Supreme Court set forth the following factors to be considered in determining whether there has been substantial performance: "the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed."[21] The Fifth Circuit recently explained that "[s]ubstantial performance occurs when a building or other construction may be used for the purpose intended despite defects or omissions in the construction."[22] It is the contractor who ultimately bears the burden of proving substantial performance. Once substantial performance is established, "the burden of proof then shifts to the owner who must prove the existence and nature of the alleged defects, that they are due to faulty material and/or workmanship, and the cost of repairing the defects."[23] In this case, the Movant, Sightlines, bears the burden of proof at trial of showing there has been substantial performance of the Parties' contract.

### C. Evidence Supports Finding of Substantial Performance

Pursuant to the contract, Sightlines was entitled to its second payment when its project materials were delivered to the project site and to its third and final payment ten days after the completion of the project. For the following reasons, the Court finds that

---

[19] *Id.*
[20] *Mayeaux v. McInnis*, 2000-1540 (La.App. 1 Cir. 9/28/01), 809 So.2d 310, 313, writ denied, 2001-3286 (La. 3/8/02), 810 So.2d 1164 (citing Airco Refrigeration Serv., Inc. v. Fink, 242 La. 73 (1961)).
[21] *Airco Refrigeration Service, Inc., v. Fink*, 134 So.2d 880, 882 (La 11/6/1961); See also, *Neel v. O'Quinn*, 313 So.2d 286, 290 (La.App. 3 Cir. 4/21/1975); *Superior Derrick Services, L.L.C. v. Lonestar 203*, 547 Fed.Appx. 432 (5th Cir. 2013)(unpublished).
[22] *Superior Derrick Services, L.L.C. v. Lonestar 203*, 547 Fed.Appx. 432 (5th Cir. 2013)(unpublished).
[23] *Neel v. O'Quinn*, 313 So.2d at 290.

Sightlines has submitted evidentiary support showing that it is entitled to both of these payments.

Various affidavits and authenticated photographs demonstrate that LLI's Luxury Suites had been constructed and were in use in September of 2012, September of 2013, and October of 2014. The President and Director of Sightlines, David L. Giffen ("Giffen"), submitted an *Affidavit* wherein he attested to the fact that on September 28, 2012, he was personally invited to a reception at the Doug Williams Stadium where the hospitality suites constructed by Sightlines were showcased.[24] Notably, Giffen further attested that "the suites were fully functionally and equipped with power, climate control and other amenities and conveniences."[25] Additionally, Sightlines offered the affidavit of Phillip T. Doiron who testified that he attended a high school football game at Doug Williams Stadium on October 18, 2013, where he observed both hospitality suites in use by game officials, coaching staff, and even Mr. Fields.[26] Doiron further attested to taking three (3) color photographs which show individuals within the hospitality suites during the same football game.[27]

Pursuant to the express terms of the Parties' contract, LLI was obligated to submit its second payment to Sightlines "when all materials are at [the] site."[28] Sightlines has offered evidence showing that the luxury suites had been constructed at LLI's Doug Williams' campus. This evidence, in and of itself, demonstrates that all of the materials necessary to install the luxury suites in the Doug Williams Stadium had been delivered to the project site. LLI has offered no evidence to refute this.

---

[24] Rec. Doc. 16-4, p. 1, ¶7.
[25] Rec. Doc. 16-4, pp. 1-2.
[26] Rec. Doc. 11-4, p. 1; Rec. Doc. 16-6 (Supplemental Affidavit).
[27] Rec. Doc. 11-4.
[28] Rec. Doc. 1-2, p. 3.

Accordingly, the Court finds that the undisputable evidence shows that Sightlines has carried its evidentiary burden in showing that it is entitled to its second payment under the terms of the contract.

Sightlines offers additional evidentiary support to show that it substantially completed its contractual obligation and is, therefore, entitled to its third and final payment under the Parties' contract. Specifically, Sightlines points to several email communications between Sightlines' President Giffen and Cleo Fields from December 21, 2012 through June 10, 2013—the relevant time period when Sightlines maintains that it had substantially completed its contractual obligations.[29] In sum, the emails include repeated demands by Giffen to Fields seeking payment for the completion of the suites. Glaringly absent from any of the communications from Fields on behalf of LLI to Giffen is any indication or expression that Sightlines had failed to complete its contractual obligations or that the suites were not capable of being used for their intended purposes. Rather, the Parties' correspondence indicates quite the contrary.

For instance, on January 2, 2013, Giffen sent the following message to Fields:

"Cleo, I have attempted to contact you every day since December 7th. The only thing I can imagine is that you are out of the country and cannot get your text messages, phone calls or emails because you always return my calls. I need to know what is going on at your end on payment for the Luxury Suites. Please contact me as soon as possible or have someone at the institute contact me."[30]

Within fifteen minutes, Fields responded as follows:

---

[29] Rec. Doc. 11-3, pp. 5-11. Giffen attested to the fact that the emails "are all true and correct copies of communications sent and/or received by [Giffen] in connection with [his] efforts to obtain payment remaining due to Sightlines, Inc. pursuant to the contract." Rec. Doc. 11-3, p. 1.
[30] Rec. Doc. 11-3, p. 11.

7

"Got your messages, sorry for delay, **there is no good reason for you not to have received payment by now**. Meeting with Ben today to discuss. Will be in touch."[31]

In response to another request for payment on the Luxury Suites, Fields responded that he "understood [Giffen's] frustration and [could not] express how much [he] appreciate[d] [Giffen's patience]. We hope to have this entire matter resolved within the next few weeks, we are waiting on a final audit."[32]

Importantly, it is undisputed that Fields is LLI's founder, LLI's designee for the corporate deposition in this case,[33] and that he held himself out to be LLI's authorized representative to Giffen for the purposes of the Luxury Suites contract.[34] As LLI's authorized representative, Fields' email statements would be treated as an admission by a party opponent.[35] Accordingly, the Court finds that these statements offer evidentiary support for Sightlines' position that there was no reason for delay of payment considering it had substantially performed its work under the contract.

In a feeble attempt to defeat Sightlines' summary judgment motion, LLI makes the conclusory argument that Sightlines "has breached its contractual obligations with

---

[31] Rec. Doc. 11-3, p. 11. (emphasis added).
[32] Rec. Doc. 11-3, p. 7.
[33] Rec. Doc. 16-7, p. 1; Rec. Doc. 16-8, p. 1 ("Mr. Fields was personally involved in negotiations with Dave Giffen. Mr. Fields held himself out to be an authorized representative of the Louisiana Leadership Institute and made oral representations and was the author of certain communications to Sightlines, Inc. relevant to the subject matter of this litigation.").
[34] LLI also identified Fields in its Initial Disclosures as having knowledge about the contract and all defects associated with the installation of the Luxury Suites. Rec. Doc. 16-2, p. 2.
[35] Rec. Doc. 16-2 (LLI's Rule 26(a)(1) Initial Disclosures No. 1 "Mr. [Cleo] Fields is knowledgeable of all aspects of the contract at issue and all defects associated with the installation of the stadium suites at the Louisiana Leadership Institute."); Rec. Doc. 16-8 (Sightline's Rule 26(a)(1) Initial Disclosures No. 2: "Mr. [Cleo] Fields was personally involved in negotiations with Dave Giffen. Mr. Fields held himself out to be an authorized representative of the Louisiana Leadership Institute and made oral representations and was the author of certain communications with Sightlines, Inc. relevant to the subject matter of this litigation."). A statement is not hearsay if it "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship"; or if it is being offered for some other purpose besides its truth, such as knowledge or state of mind. Fed.R.Evid. 801(d)(2)(D).

LLI, thereby rendering the suites unsuitable for their intended purpose."[36] Without offering any evidentiary support for its position, or identifying how the suites are unsuitable, LLI submits that "the work performed by Sightlines cannot pass inspection and presents a health and safety risk to patrons of the suites and the stadium as a whole."[37] The Court finds that LLI's unsubstantiated argument without more is insufficient to defeat Sightline's summary judgment motion. Moreover, the "Scope of Work" provision of the Parties' contract explicitly excluded the following four items: "1. Power hook up to panel box in Luxury Suites; 2. Waste and water hook up to Luxury Suites; 3. Building permits; and 4. Use or Sales Tax."[38] Hence, the Court finds that LLI's lack of permitting argument has no merit because the responsibility for obtaining the proper permits falls outside of the scope of the Parties' contractual agreement and cannot now be used to negate LLI's obligation to pay for the contracted services.[39]

Furthermore, to the extent LLI relies on the punch list or Brown Claims Management Group Report to defeat summary judgment, the Court finds that the suggested repairs do not create a genuine issue of material fact as to whether Sightlines substantially performed its contractual duties.[40] Rather, the undisputed evidence submitted by Sightlines supports a finding that the Luxury Suites were capable of being used and were being used for their intended purpose, in spite of any minor defects or punch list items.

---

[36] Rec. Doc. 13, p. 2.
[37] Rec. Doc. 13, p. 2.
[38] Rec. Doc. 16-4, p. 3. (emphasis added).
[39] Nevertheless, Sightlines submitted correct drawings of the luxury suites' design for which Sightlines received engineering approval of its construction plans for the State Fire Marshall. Rec. Doc. 16-4.
[40] Rec. Doc. 16-5.

Considering the evidence at hand, the Court finds that Sightlines has satisfied its burden of proof and has made a showing that it substantially completed the contractual work and is entitled to payment.

## IV. CONCLUSION

Accordingly for the foregoing reasons, Sightlines' *Motion for Partial Summary Judgment*[41] is hereby GRANTED.

Signed in Baton Rouge, Louisiana, on November 7, 2014.

_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[41] Rec. Doc. 11.